CONTINENTAL JEWELRY COMPANY *vs.* SAM MINSKY.

Somerset.　Opinion December 24, 1920.

*Motion to dismiss.　Directed verdict.　Exceptions.　A motion to dismiss does not lie where to support or resist it proof is necessary dehors the writ.　Exceptions to a directed verdict must be overruled unless the jury might find a sustainable verdict upon at least one of the issues of fact raised by the pleadings upon the entire evidence.*

This case comes to us upon defendant's exceptions which are two in number. The first is based upon the refusal of the presiding Justice to grant a motion to dismiss, the motion being upon the ground that the plaintiff is not a corporation but an individual. The second exception is to a directed verdict in favor of the plaintiff.

*Held:*

1.　Upon a motion to dismiss the court has no jurisdiction to determine any issue arising from a matter that is not apparent by an inspection of the writ. If no defects nor defenses appear on the face of the writ the motion to dismiss must be denied, regardless of the merits of the case. Such motion does not lie where to support or resist it proof is necessary dehors the writ.

2.　Where a verdict is directed, and exceptions are taken, such ruling is based upon the entire evidence and will stand unless it is shown to be erroneous. The test of such error is whether a jury would have been warranted by the evidence in finding a verdict contrary to the one ordered. If such jury verdict would be sustainable then the issues of fact should be submitted to that tribunal, otherwise the directed verdict must stand.

The issues of fact raised by the defendant in his plea and brief statement are six in number. If any one or more of these issues are so supported by the evidence that, under correct rules of law, the jury could have properly found for the defendant, then the second exception must be sustained, otherwise it must be overruled.

After a careful examination of the evidence, in the light of the law applicable to the same, the court is of opinion that a jury verdict for the defendant could not have been sustained upon any of the issues relied upon by the defendant.

On exceptions by defendant. Assumpsit on promissory notes given for jewelry sold by plaintiff to defendant. Plea the general issue with brief statement. Defendant filed a motion to dismiss,

which was overruled by the presiding Justice, and defendant excepted. At the conclusion of the evidence the presiding Justice directed a verdict for the plaintiff for the amount sued for and accrued interest, and the defendant took exceptions. . A verdict for plaintiff for $204.08 was returned.   Exceptions overruled.

The case is fully stated in the opinion.

*Fred F. Lawrence,* for plaintiff.

*James H. Thorne,* for defendant.

SITTING:   CORNISH, C. J., SPEAR, PHILBROOK, MORRILL, WILSON, JJ.

PHILBROOK, J.   This case comes to us upon defendant's exceptions, two in number, the first based upon refusal to grant a motion to dismiss, the second upon a directed verdict in favor of plaintiff.

*First Exception.*   The docket entries, made part of the case, show that the action was entered at the January term, 1920; that there was a general appearance by defendant through counsel; that on the second day of the following April term pleadings, with brief statement, were filed and trial begun before a jury.   The record, of the evidence shows that the plaintiff introduced the notes which were the basis of the action, and rested its case.   At this point the defendant presented a motion to dismiss on the ground that the plaintiff is not a corporation, as alleged in the writ, but is an individual, one Bixler by name, and that the Continental Jewelry Company does not exist as a corporation, as alleged in the writ. This motion was overruled and exceptions allowed.   It is quite plain that the ruling is correct, for upon a motion to dismiss the court has no jurisdiction to determine any issue upon any matter that is not apparent by an inspection of the writ.   If no defects nor defenses appear on the face of the writ, the motion to dismiss must be denied regardless of the merits of the case.   Such motion does not lie where to support or resist it proof is necessary dehors the writ.   *Hunter* v. *Heath,* 76 Maine, 219; *Shurtleff* v. *Redlon,* 109 Maine, 62; *Hubbard* v. *Limerick Water and Electric Co.,* 109 Maine, 248.

*Second Exception.*   Where a verdict is directed, and exceptions are taken, such ruling is based upon the entire evidence and will stand unless it is shown to be erroneous.   *Bouchles* v. *Tibbetts,*

117 Maine, 192; *Peoples National Bank* v. *Nickerson*, 108 Maine, 341. The test of such error is whether a jury would have been warranted by the evidence in finding a verdict contrary to the one ordered. If such jury verdict would be sustainable, then the issues of fact should be submitted to that tribunal. *Royal* v. *Bar Harbor and Union River Power Co.*, 114 Maine, 220.

The issues of fact raised by the defendant in his plea and brief statement are six in number. Although this is not the order in which those issues are stated by the defendant, yet for convenience of discussion they may appear as follows: 1, that because he was examined and accepted for service in the United States army, and was obliged to hold himself in readiness for a call to the colors, he should be excused from performance of the civil contract involved in this controversy, even though he was not actually so called; 2, that his signature to the contract was obtained by fraudulent representations, or by misrepresentations, made by the plaintiff's agent who was authorized to make the contract; 3, that the contract, consideration for which are the notes in suit, was a conditional sale agreement, in which certain warranties were made, and that those warranties failed; 4, that by reason of such failure he seasonably and properly rescinded the contract, which rescission was accepted by the plaintiff; 5, that although he took all precautions, in the rescission of the contract, to place the plaintiff in as good a position as it occupied before the contract was made, yet the plaintiff has taken no steps to minimize the damages alleged to have grown out of said rescission; 6, that the plaintiff has suffered no damages.

Our attention has not been called to any state or federal statute, or rule at common law, nor do we know of such, which releases a person from the obligations arising from a civil contract, like the one at bar, because he has been accepted for military service to be rendered to his country. The act "to extend protection to the civil rights of members of the military and naval establishments of the United States engaged in the present war," approved by the President March 8, 1918, cited as the Soldiers' and Sailors' Civil Relief Act, while being in the nature of a moratorium for the benefit of those who were at the time engaged in actual service, obviously affords the defendant no immunity in the case at bar, and the first issue raised by his brief statement, therefore, avails him nothing.

Are any one or more of the other issues so supported by the evidence that under correct rules of law the jury could have properly found for the defendant. *Johnson* v. *N. Y., N. H., and Hartford Railroad;* 111 Maine, 263. *Bixler* v. *Wright,* 116 Maine, 133.

The plaintiff is a wholesale dealer in jewelry, with its principal office in Cleveland, Ohio. It reaches the retail trade, in part at least, through travelling agents. One of those agents called on the defendant at his store in Madison, Maine, and obtained his signature to a printed paper, which he says he did not read, giving lists of jewelry, partial description of the same, prices, terms of payment, warranty, exchange privilege, and other information concerning and governing the transactions between the parties, concluding with an order, signed by defendant, for goods which he might "purchase on the above terms and conditions." This paper is referred to by the parties as the contract. The defendant ordered certain goods described and priced in the contract to the amount of one hundred ninety-two dollars. In due course of time the goods were shipped to and received by the defendant. A show-case, for which no charge was made, followed the goods. The latter were not unpacked until the show-case came, but between the time of receiving the goods and that of receiving the show-case and unpacking the goods, the defendant had received and signed what the parties call credit cards, and are declared upon in the plaintiff's writ as promissory notes. The defendant, after unpacking the goods, claimed that the prices were too high for the quality of the merchandise bought, and wrote the plaintiff, which writing was twelve days after he signed the credit cards, stating that the jewelry was "not satisfactory regarding prices and quality," and further stating that he could not handle the jewelry at the prices for which he had been charged. He claimed that he had handled goods of similar quality, evidently the cheaper kinds of such merchandise, and was well acquainted with the quality and price which should obtain in the line under consideration. In that letter he made no complaint concerning the agent's conduct or representations. The plaintiff's reply denied that the prices were too high, when the comparative quality of the goods was considered and suggested co-operation for the success of the defendant's business. Again the latter wrote, this time making no complaint, but saying he would so co-operate were it not for the fact that he expected a call to the

army the following month, asking instructions for returning the goods, and expressing regret with respect to the turn affairs had taken. Through the next two months the correspondence consisted only of demands made by the plaintiff for payment of notes coming due, to which the defendant made no reply, and after the two months the correspondence on the defendant's side was carried on entirely by his attorneys. It is needless to say that the correspondence became acrimonious and provocative of litigation. It is proper to again call attention to the fact that up to the time of bringing suit the defendant had made no complaint personally, except as already stated. When he took the stand to give testimony at the trial his grievance as to fraudulent representations of the agent, stated in its strongest form, was that the salesman told him "you wouldn't take any chances whatever; in case you wouldn't sell it you can return it back, and you have a right to keep it fifteen months time, and we will also send you a showcase;" also, that if the jewelry was not satisfactory it could be returned; that the contract was not on a commission basis but "whatever you sell you will have to pay for it and according to the prices under the contract." He testified that these statements induced him to sign the contract and without this inducement he would not have signed. Still discussing the defense of fraud, do these statements, even though uncontradicted, the agent not being called as a witness, to affirm or deny them, constitute fraud sufficient to raise a successful defense. The defendant relies with much confidence upon a recent case, *Bixler* v. *Wright*, supra, decided by this court in the year nineteen hundred seventeen. But that case is distinguishable from the case at bar. Wright was the proprietor of a small country store and there was no testimony to show that he ever dealt in jewelry. This defendant, upon the witness stand, said he had been handling jewelry long enough to know the value of merchandise of that kind, and in his correspondence gave the names of several wholesale jewelry dealers with whom he had done business. Representations made to a man having the experience that this defendant had, according to his own statements, and representations made to a man of little or no such experience, may be quite different in their effect, and consequently are to be examined carefully when presented as a basis for fraud. For, to constitute fraud, it is elementary law, needing no citation of authorities, that the person, to whom the

representations were made, must prove that he was deceived and thereby acted to his own injury; and this court in *Hotchkiss* v. *Coal & Iron Company*, 108 Maine, 34, has approved an instruction that the representations must be considered, examined and determined with reference "to the knowledge which the parties had of the matter at the time . . . . as interpreted by the subject matter and all of the circumstances surrounding the parties at the time." Moreover, in the case against Wright the agent falsely represented himself as a brother member of a fraternal order, and that he had been sent to Wright by a near-by neighbor, thus disarming Wright of suspicion and perhaps of caution. No such falsity exists in the case at bar. In the Wright case the agent's talk was all about the details of a consignment, when, in fact, the contract which Wright was induced to sign, without reading, was an unconditional order for the purchase of merchandise. In the case at bar the alleged representations are notably different. Here the salesman is represented as saying "you wouldn't take any chances whatever; in case you wouldn't sell it you can return it back, and you have a right to keep it fifteen months time, and will also send you a showcase." Turning to the contract, under which the defendant had rights, we find that there is a provision by which he may keep goods fifteen months and if not then sold return them and receive in exchange other jewelry in plaintiff's stock, dollar for dollar. There is no provision for defendant to receive his money back, nor did the agent so state. As for the alleged representation that if the jewelry was not satisfactory it could be returned, we find that the contract again provides for this contingency by agreement on the part of the plaintiff that unsatisfactory goods might be promptly returned and that a new duplicate article furnished without expense to the defendant. And even according to the latter's own testimony it was plainly stated by the plaintiff's agent that the contract was not on a commission basis but that whatever the defendant sold he must pay for according to the prices under the contract. Instead of acting within the protective terms of his contract the defendant refused to pay his credit cards and attempted to return all goods which he had not sold without waiting for the expiration of the fifteen months' period. But another important difference between the Wright case and the case at bar appears when we observe that this case is a suit upon

credit cards in the nature of promissory notes which was not the fact in *Bixler* v. *Wright*. In the case at bar the goods were received and there was ample opportunity to examine them before signing the credit cards. This was not done. In effect the defendant ratified his act of signing the contract when he signed the cards on which he is now sued, having been given full opportunity to examine the goods and to carefully read the contract under which he made the purchase. These conditions did not obtain in the Wright case. We are of opinion that the defense of fraud arose in defendant's mind after he was called upon to pay his obligations and that this defense is not well founded.

The third issue of fact raised by defendant is that the contract contained certain warranties which failed. He says that he sold only one tie pin and the complaint of his customer was that the pin was a cheap one. Well it might be for the cost price was only $2.20. He gave a brooch to his fiancee which he claimed to be unsatisfactory but the cost was only $3.10 according to his testimony. He took for his own wear a society emblem which he also says was unsatisfactory. He does not state the price of this emblem but the order shows a cost of such articles running from seventy-five cents to $2.40. None of these were returned, nor was there any attempt to return them. His claim of breach of warranty seems to be that these articles, or part of them, were described in the contract as "solid gold." With his knowledge of such merchandise and with prices carried out against each article we cannot persuade ourselves that there were any warranties upon which the defendant relied, but that this defense arose in his mind simultaneously with the attempted defense of fraud.

It is the opinion of the court that a jury verdict for the defendant could not have been sustained upon any of the defenses which we have discussed. It must follow that consideration of claims of rescission is unnecessary, since defendant has not established a right to rescind. The directed verdict was correct.

*Exceptions overruled.*